By the Court. Sandford, J.
We wiE first examine the plaintiff’s objections to the report of the referees.
1. He claims that the ordinance did not embrace the services rendered by him as counsel, in the trying or in the argument of causes in which the corporation of the city was interested in the courts of justice.
The language of the ordinance is too plain to admit of any doubt on this point. It makes it the duty of the counsel to perform all such services (other than those previously enumerated) m the lime of his profession, connected with the business of the corporation, as are not comprised in the business of the attorney. The trial and argument of the lawsuits of the corporation, are connected with their business; those duties are in the line of the profession of a counseEor at'law, and they are no part *268 of the business of the corporation attorney. It seems to us that no reasoning, however ingenious, can impair the force of this plain statement. As to the argument sought to be drawn from the fact, that the duty of arguing causes often required the counsel to attend courts held at a distance from the city of Hew York, and from the expenses consequent upon such attendances ; we answer, that his time being paid for by his salary, it is indifferent to him whether he performs his duty in one place or in another. He voluntarily assumed the duty, and must discharge it, wherever, in its regular course, it may happen to call him. His expenses on such attendances are a proper charge against the city.
The ordinance was in force when the plaintiff was appointed. There is therefore no room for argument on the score of the inadequacy of the compensation.
In respect of the great mass of litigated suits transferred to him from his predecessor, after he entered upon the discharge of his duties, it suffices to say that if that were business which he did not undertake or contemplate when he accepted the office, he should have, either refused to receive the transfer, or resigned. Those suits were a part of the business of the corporation, and his acceptance of the transfer evinced his assent that they were within the duty he had assumed as corporation counsel. It is quite probable, from the testimony in the case relative to the taxed costs, that the plaintiff’s cheerful discharge of his duty in receiving these transferred causes, received a fit and reasonable reward in that shape.
2. The plaintiff’s next point asserts his right to recover conn- ■ sel fees in the suits in equity, because the ordinance did not require the corporation counsel to be a solicitor or a counsellor in chancery.
The ordinance provides that “ a suitable person of the degree of counsellor at law in the supreme court, shall be appointed as counsel to the corporation.” This simply prescribed a qualification for the office; it did not define or limit its duties. The defence of a suit in equity, is as much the business of the corporation, as is the defence of a suit at law; and the counsel to the 3 0 3 corporation, in arguing a chancery suit, is performing a duty *269 directly imposed upon Mm by the ordinance. If he were incapable of arguing in chancery, by reason of his never having been admitted as a counsellor in that court, it might have rendered it necessary for the corporation to employ another counsellor for that specific purpose, or to remedy the difficulty by removing the incumbent altogether. If the plaintiff were qualified to practise as counsel in that court, his arguments there for the corporation, were in their business, in the line of his profession. "When the ordinance was adopted, there were four or five courts of record in this city, besides the supreme court, in each of which an admission to practise as counsel was necessary, in order regularly to try or argue causes in such courts respectively. The city was exposed to be sued in all of those courts, and the argument for the allowance of counsel fees in smts in this court, in the common pleas, and in the United States courts, is as strong as it is in favor of allowing such fees in the suits in chancery. The qualification of “ counsellor at law in the supreme court,” was inserted in the ordinance as prescribing that degree of professional standing which entitled a lawyer to practise, if he chose so to do, in all the courts in the state. The business which he was to transact as counsel for the corporation, was to be in the line of his profession as a lawyer of the degree of counsellor; not merely the business of the city in the supreme court.
3. The plaintiff claims to recover compensation for drawing various special contracts, conveyances, laws, and memorials, on the ground that these were services which others could perform, who were not lawyers, and therefore they were not “ in the line of his profession.” The answer to this is, that these services are generally performed by lawyers; they are appropriate to that profession, and not to any other; they were rendered by the plaintiff as corporation counsel, and they were “ connected with the business of the corporation.”
We now come to the objections taken to the report by the defendants.
1. The point as to the taxable costs, we decided against the corporation, in Brady v. The City of New York, 1 Sand. R. 569.
*270 2. The referees allowed to the plaintiff three hundred dollars for attending at Albany, and opposing, in behalf of the city of Hew York, the application of the city of Brooklyn for legislation adverse to the ferry rights of the former city; and two hundred dollars for like attendance upon the legislature relative to several laws applied for by the city of Hew York.
The defendants contend that these duties were connected with the business of the corporation; and if they were not, then the city is not liable at all, there-being no special retainer pretended, nor any contract other than the plaintiff’s general employment under the ordinance.
Although we agree that these matters were the business of the corporation, we think they were not within the Ene of the plaintiff’s profession. The soliciting and opposing the passage of biffs brought into the legislature, do not form a part of the business of counsel, and generally those services are performed by persons who are not lawyers. In many instances, no doubt, lawyers are properly and advantageously employed, because of them superior practical mental training, and them professional facility in investigating, collating, and presenting facts and arguments, bearing upon important subjects connected with legislar tion. Stiff, this is not a professional duty, and the caffs for its discharge by members of the bar are not usual nor frequent. We therefore are clear that the services in question were not a part of the plaintiff’s duty as corporation counsel. The referees have decided that they were not gratuitous, and we think the evidence fully sustains that conclusion. He attended at Albany, on the request of the leading corporation officers, charged with the important interests involved; and the city had the benefit of his services. It is said he was called on because he was corporation counsel, and as such counsel only. This is true in the sense that he was selected for this duty, in preference to any other lawyer, or individual equally capable; because at the time he filled the office of counsel to the corporation. We do not think it is true in the sense that he was employed to perform the service as a part of his duty as corporation counsel, for which he was paid by the salary stipulated in the ordinance. The report of the referees as to these items is sustained.
*271 3. Among the counsel fees allowed, which were objected to, is one on an arbitration with Mrs Flanders. This item occurred after the plaintiff ceased to- hold the office of-corporation counsel, and it is unquestionably a proper charge.
4. The counsel fees allowed- by the referees in the four suits against Quin, Benson and others, Williams, and Rawson, remain to be considered.
The city was not a party in either of these suits, nor under any legal obligation or duty to defend them. The omission to defend them could not involve the city in any loss ; nor could an adverse result, upon a defence interposed. We agree, therefore, with the plaintiff’s counsel, that the defence of these suits was not “the business of the corporation,” prior to the respective resolutions on that subject; and the plaintiff was not obliged to defend them as a part of his duty as corporation counsel.
Did the resolutions, referring Quin’s suit to him with power, authorizing him to defend the suits of Williams and Rawson, and requesting him to defend that of Benson and others, alter the state of the case in respect of the plaintiff’s obligation, or that of the corporation?.
If it were proper for the city to defend those suits, their defence, upon the adoption of the resolution, became the business of the corporation, which the plaintiff was bound to undertake by virtue of his official station. If it were not the proper business of the city to defend them, the plaintiff, as them legal adviser, must be presumed to have known it, and he should have so advised them, and declined to act, unless on a representation of his opinion and views, the corporation had expressly undertaken to pay him the expenses of the defence.
It is questionable whether it was competent for the corporation, even by such a resolution, to make itself liable for expenses incurred in defending lawsuits in which it had no interest. We refer to Hodges v. The City of Buffalo, 2 Denio 110; Brown v. The City of Utica, 2 Barb. R. Sup. Court, 109; Halstead v. The City of New York, in the supreme court in this district, November, 1848, reported in 7 N. Y. Legal Observer 74(a); *272 and Cornell v. The Town of Guilford, 1 Denio 510; as illustrating the limits to municipal authority in this respect.
We need not, however, decide the question of power. The resolutions adopted, evidently referred these defences to the plaintiff, as being the proper business of the corporation. There was no special retainer of the plaintiff in his professional capacity, aside from his official duty. All this he knew, or was bound to know, from the resolutions, and the ordinance which defined his functions; and his act in proceeding to defend the suits without objection, and without requiring a special retainer, was an assent to receive and treat them as a part of the business of the corporation, within his line and duty as an officer, which he cannot now recall.
In our opinion, these four items were improperly allowed by the referees, and they must be deducted from the sum reported to be due to the plaintiff. On his consenting to such deduction, the defendants’ motion to set aside the report will be denied.

 S. C. in the court of appeals, 3 Comst. 430.