W. C. CHAMBERLAIN v. BOARD SUPERVISORS LAWRENCE COUNTY.

1. BOARD OF SUPERVISORS.   *Suit.   Trees cut on school-land.*

   Under ¿ 744, code 1880, which authorizes the board of supervisors to sue
   for money due as part of the school-fund, the board may sue for the
   value of trees cut on land acquired in lieu of a sixteenth section of a
   township of the county; and this although the land, after being so ac-
   quired, has been embraced in another county.

2. SCHOOL-LANDS.   *Title when in United States.   No adverse holding.*

   Until sold or leased for school purposes, the title to sixteenth sections re-
   mains in the United States, which cannot be disseized.   Hence, in such
   case pleas setting up that defendant cut the trees while in the adverse
   possession of the land are demurrable, it not being averred that the land
   had ever been sold or leased for school purposes.

3. LIMITATIONS.   *Suit by county.   Cutting trees on school-land.*

   In a suit by the board of supervisors for cutting trees on a sixteenth section,
   the statute of limitations may be pleaded as a defense.   *Brown* v. *Super-
   visors*, 54 Miss., 230.   So held in this case, where the right of action to
   which the statute was pleaded accrued prior to the constitution of 1890.

4. TAX-TITLE.   *Sixteenth section.   Presumption.*

   As a tax-collector's deed to individuals and a list of lands sold to the state
   are, under ¿ 1300, code 1871, *prima facie* evidence of a valid assessment
   and sale, the introduction of such deed or list establishes, *prima facie*,
   that the land had been previously sold or leased so as to become liable
   to taxation.

5. SAME.   *Sale under act of 1875.   Proof of prior delinquency.*

   It devolves upon one claiming under a tax-sale made by virtue of the
   abatement act of 1875 to show by independent evidence that the land
   then sold was delinquent for taxes prior to the year 1874.   *Chambers* v.
   *Myrick*, 61 Miss., 459.

FROM the circuit court of Lincoln county.

HON. J. B. CHRISMAN, Judge.

On June 29, 1892, the board of supervisors of Lawrence
county brought this action in the court below against appel-

lant, Chamberlain, for cutting and removing trees from certain
land formerly situated in Lawrence county, now in Lincoln
county. It is alleged in the declaration that the trees were
cut from school-lands belonging to township seven, range
eleven east in the county of Lawrence; that the same had
been located and granted to the township in lieu of a six-
teenth section, under special act of congress approved Janu-
ary 13, 1831; that, under the provisions of said act, the owner-
ship of said lands was vested as a title to a sixteenth section
in the inhabitants of the township; that the board of super-
visors of Lawrence county, for the purposes of suit, is the
owner of said lands. The declaration contains three counts:
First, for the statutory penalty of cutting trees; second, for
the value of lumber into which the trees were converted,
and, third, for the actual value of the trees. It is alleged
that the defendant entered upon the lands January 1, 1878,
knowing its ownership as alleged, and, at divers times from
that date and before the bringing of suit, cut and removed
the trees. The defendants pleaded the general issue and a
number of special pleas, demurrers being interposed to the
latter.

The seventh plea to the second count, as to which this
court holds the demurrer was properly sustained, averred
that the defendant had been in the occupation of the land
from which the timber was cut, holding and claiming it under
color of title as owner, adversely to all persons.

The tenth plea, as to which this court holds the demurrer
was properly sustained, was to the third count of the declara-
tion, and averred that, at the time of cutting the timber, de-
fendant was in possession of the land, claiming to be the
owner and holding the same adversely to all persons, and
that such claim of ownership had been continuous for more
than ten years before suit brought.

The third, sixth, and ninth pleas, as to which this court
holds the demurrers should have been overruled, set up the
defense of the statutes of limitation. The third plea was

filed to the first count of the declaration, and averred that the right of action for the statutory penalty therein demanded had not accrued within one year next before the bringing of suit. The sixth plea was to the second count of the declaration, and set up the statute of limitations of six years. The ninth plea was to the third count, and also set up the statute of limitations of six years. Before verdict, plaintiff dismissed the first count of the declaration, as to the statutory penalties, and thus eliminated from consideration all questions growing out of the same.

The case was tried on the general issue, when the plaintiff offered evidence showing title as set forth in the opinion, that is to say: 1. A copy of page 102, volume 1, of school-land indemnity sections, certified to by the commissioner of the general land-office, embracing the lands in controversy, it being designated "record of sections of land for school purposes, under the provisions of the act of congress of May 20, 1826." It is recited in said record that the lands were selected for school purposes under the act of January 13, 1831, and reference is made to a letter to the register of June 18, 1855, which letter was not produced. 2. Certified copy of a letter dated June 12, 1855, from the secretary of the interior to the acting commissioner of the general land-office, which refers to a letter of the register at Washington, Miss., of date April 3, 1855, and an accompanying list of lands selected for school purposes under the special act of January 13, 1831, in lieu of the sixteenth section in township seven, range eleven east, patented to Will Whitehead, which papers are recited to have been submitted in a letter from the commissioner of the land-office of date June 9, 1855. The letter states that the list is indorsed with the approval of the selection reported by the secretary of the interior; but neither the letter referred to nor the list said to have been approved were offered in evidence. 3. Three copies from the land-office records at Jackson, certified by the register, which recite that the lands in controversy were located

for schools in Lawrence county under provisions of the act of congress approved January 13, 1831, by Isaac Smith, commissioner, April 2, 1855, and reciting also that the location was approved by a letter from the commissioner of the general land-office, dated June 8, 1855, but this letter was not offered in evidence. 4. A certified copy of an order of the probate court of Lawrence county at the August term, 1854, showing that on the petition of the trustees of the Monticello Academy, Isaac Smith was appointed commissioner to locate one section of the public lands subject to private entry and sale under the act of January 13, 1831. All this evidence was objected to by defendant, and plaintiff having announced that it was all the evidence of its title to the land, the defendant moved the court to exclude the same, which motion was overruled. Plaintiff then introduced evidence as to the number and value of the trees removed from the land, and, its evidence being closed, defendant moved to exclude all the evidence, which motion was overruled.

The defendant then offered in evidence lists of land sold by the tax-collector at a tax-sale, and a deed from a purchaser of some of it, together with a deed from the state to himself as to the remainder, showing a sale of the land for the taxes in 1874 and 1875, and a purchase by him in 1878. This evidence was objected to by the plaintiff, on the ground that the lands were not taxable, except a portion of the same embraced in a deed from one Hoskins to defendant, which was made in 1891, and this was objected to on the ground that there was no evidence to show that Hoskins had any title. The objection was sustained, and the evidence excluded. When the objection was made, and before it was acted upon, counsel for defendant stated that, in connection with the tax-deeds, the defendant proposed to show by the evidence continuous occupation of the land by the defendant from the time he received the deeds up to the commencement of the suit, and that he claimed title under them, and asserted own-

ership adversely to all persons for more than ten years before the commencement of suit.

The court refused a peremptory instruction in favor of defendant, and gave to the jury an instruction to find for plaintiff, and to assess the damages in a sum equal to what the evidence showed the trees cut to be reasonably worth. There were other instructions, but, in view of the opinion, it is not necessary to set them out. The opinion contains such further statement of the case as is necessary to an understanding of the questions decided.

*Cassedy & Cassedy*, for appellant.

1. Without regard to the validity of the pleas, the demurrers thereto should have been extended back to the declaration, for it shows no right of action in the board of supervisors. There is no statute that authorizes it to recover damages for cutting timber on school-land. Section 2 of the act of 1886 (Laws, p. 33) confines the right of the board to recover the possession of the lands, or the proceeds or income thereof when sold or leased. The act of 1886 is amendatory of §§ 739, 741, code 1880, and it will be seen by reference to these that the scheme inaugurated for the management of school-lands never contemplated that trespasses would be committed upon them, and hence no provision was made authorizing the board to maintain a suit of this character.

2. If mistaken in this, still, a proper construction of the legislation would confine the right of suit to the board of supervisors to the county where the land is located. The legislature never had in view such a case as is made by this declaration. By § 737, code 1880, provision is made for the leasing and management of a section where the township entitled to it is partly in one county and partly in another, and where the section is partly in one county and partly in another. But no provision is made for suit where the section lies wholly in one county and the township entitled to it in another.

---

3. The declaration as to title bases the right of recovery upon a special act of congress of January 13, 1831. See U. S. Statutes, p. 451. This act, instead of being for the benefit of schools in a *township*, declares that it is for the benefit of schools in Lawrence county, Mississippi. This being true, the board of supervisors is not invested with authority to sue for damage done this land.

. 4. Said act of congress donates one section of land, and not parcels of various sections. On this point, see 5 How. (Miss.), 751; 44 Miss., 137; 62 *Ib.*, 362.

5. The pleas of the statute of limitations were a sufficient answer to the declaration, and the demurrers to these pleas should have been overruled. *Money* v. *Miller*, 13 Smed. & M., 531; *Clements* v. *Anderson*, 46 Miss., 581; *Brown* v. *Supervisors*, 54 *Ib.*, 230.

6. The pleas setting up actual adverse possession of the land under color of title and claim of ownership showed a good defense. Trespass for cutting trees cannot be maintained unless the plaintiff was in actual possession of the land. 22 Am. Dec., 37; 25 *Ib.*, 118; 40 *Ib.*, 668; 55 Miss., 390; 58 *Ib.*, 831; 61 *Ib.*, 413.

7. The evidence in support of plaintiff's title to the land was insufficient and incompetent. The best evidence was not produced, and there was no authority for the selection of the lands in the manner stated.

8. The objection to the tax-deed is based upon the assumption that the lands have never been sold or leased by the proper authorities. There is no evidence in support of such an assumption. The presumption arising from the assessment and the sale of the land is in favor of the validity of acts of public officers. The burden of showing that they had not been sold or leased, and were therefore not taxable, was upon plaintiff.

*Walter Trotter*, on the same side.

1. Plaintiff's right to bring this suit is based upon §§ 737,

739, code 1880, as amended by the act of 1886. The state seems to have directed its legislation to the condition of the property after the township has acted with reference to possession, and the annual production of the land has no application to trees cut therefrom.

2. If the board of supervisors did have a right of action, it had such right in 1878, when the trees were cut, and is barred by limitation. This is in no sense a suit in right of the United States, but is an action by the county, and the statute of limitation applies. 46 Miss., 581 ; 54 *Ib.*, 533.

It does not follow that, because the lands were once school-lands, they never became subject to sale for non-payment of taxes. The presumption is that the land had been sold or leased, and this is in favor of the legality of the action of public officers in assessing and selling them for taxes.

*R. H. Thompson*, for appellee.

1. The record shows that plaintiff had title, and the right to maintain this suit. The court takes judicial notice of federal and state legislation, and of the changing of county boundaries.

The plaintiff had authority to bring this suit under the act of 1886. Laws, p. 33.

The objection that the board of supervisors of Lawrence county could not sue is without merit. The lands were entered in lieu of a sixteenth section yet in Lawrence county.

The criticism by counsel of the act of congress of January 13, 1831, is that it authorizes the location of lands for the benefit of schools in Lawrence county generally, and not for the benefit of a particular township of the county. If this contention be correct, then the board of supervisors was most appropriately the party to bring suit. Code 1880, § 2175.

But the act of congress authorized the entry in lieu of the sixteenth section patented to Will Whitehead, and the land was sold as that section would have been.

2. Under article 25, p. 402, code 1857, the statute of limi-

tations ran against the state and counties. So, under § 2169,
code 1871. Thus the law stood until 1877, when it was
amended, and the statute was prohibited from running
against the state in certain particulars. Laws 1877, p. 82.
The whole of these statutes were omitted from the code of
1880, and, for fear of a re-adoption, the constitution of 1890,
§ 104, provides that the statute shall never run. There has
not been, since the code of 1880, any statute of limitations
running against the state or the public. As illustrative of
this point, see the following authorities : *Parmilee* v. *McNutt,*
1 Smed. & M., 179 ; *Hill* v. *Josselyn,* 13 *Ib.,* 597 ; *State* v.
*Joyner,* 23 Miss., 500 ; *Joselyn* v. *Stone & Matthews,* 28 *Ib.,*
753.

Where rights of a public nature are involved, they can
never be prejudiced by mere lapse of time. 13 Am. &
Eng. Enc. L., 714 ; Dillon on Mun. Corp., § 675 ; 97 Ill., 84.
*Clements* v. *Anderson,* 46 Miss., 581, is not an authority
against this proposition. *Furlong* v. *State,* 58 Miss., 717, was
based upon a statute in terms applicable to the state. *Money*
v. *Miller,* 13 Smed. & M., 531, relied on by appellant, is not in
point. In *Brown* v. *Supervisors,* 54 Miss., 230, the court re-
jected the idea that the title of the lands was not protected
to the public by the rule *nullus tempus occurrit reipublicæ.*
The case of *Hester* v. *Crisler,* 36 Miss., 681, shows that the
title to sixteenth sections remained in the United States un-
til the act of congress of May 19, 1852. The case of *Rabb* v.
*Supervisors,* 62 Miss., 589, determined that, even after said
act, the title is in the United States.

The rule announced in *Miller* v. *Wesson,* 58 Miss., 831, that
a disseizee cannot maintain an action for the value of trees
cut upon the land from which he has been ousted, has no
application to public lands in which the title is held by the
United States. Besides, this case is limited by the decision
in the case of *Phillips* v. *Gastrell,* 61 Miss., 413. For the
purpose of preventing trespasses, the government is to be
regarded as always in possession of its land, and there can

be no adverse possession against it.    See *Rabb* v. *Supervisors*, *supra*.

3. The records introduced in evidence show that plaintiff's title was complete. The letter register of June 18, 1855, was referred to merely as a memorandum. The record was complete without this. It is shown that the land was properly selected and located in lieu of the section patented to Will Whitehead.

4. The validity of the entry was not affected by the fact that the lands were not all entered in one section. Besides, that is an objection which can only be made by the United States.

5. All the deeds offered in evidence, except one, were tax-deeds, and the lands were not taxable. The deed received from Hoskins was made in 1891, and there was no offer to show that he had any title.

6. It is claimed, in this court for the first time, that the burden was on plaintiff to show that the lands had never been leased. When a condition of title or of fact of any sort is shown to have once existed, it is presumed to continue until the contrary is proved.

COOPER, J., delivered the opinion of the court.

The recovery sought in this case is of money which, if collected, would "constitute a part of a school-fund, to be applied for the support of schools" in the county of Lawrence; and, by § 744, code 1880, authority was conferred upon boards of supervisors to sue in such cases.

Under the act of congress, the land to be selected was to be in lieu of the sixteenth section in Lawrence county "sold and patented to Will Whitehead," and it is affirmatively shown by the record that the land patented to Will Whitehead was in township 7 of range 11 east, in Lawrence county. The reservation of the land is sufficiently shown by the records, and, under the act by which it was authorized, its beneficial interest inured to those who, but for the sale, would

have received the section patented to Will Whitehead—viz., the inhabitants of township 7, range 11 east, in Lawrence county. The fact that, in the formation of new counties, the territory in which the land lies has been excised from Lawrence county and is now a part of Lincoln county, has no influence upon the right of the beneficiaries to the enjoyment of property rights in the land, or upon the power of the board of supervisors of Lawrence county to maintain this suit. The bringing of a suit is not the exercise of a political power.

The demurrers to the seventh and tenth pleas were properly sustained. The title and possession of the land, if it has never been lawfully leased by public authority, remains in the United States, which cannot be disseized.

The demurrers to the third, sixth, and ninth pleas should have been overruled. The plaintiff is subject to the bar of the statute of limitations. *Money* v. *Miller*, 13 Smed. & M., 531; *Brown* v. *Supervisors*, 54 Miss., 230.

Except as to the sale of May, 1875, it was error to exclude the evidence offered by the defendant to show that the land had been sold for taxes and that he claimed under the tax-sales. The tax-collector's conveyance to individuals, and list of lands sold to the state, are declared to be *prima facie* evidence that the assessment and sale, and all proceedings of sale, were valid. Code 1871, § 1700; Code 1892, § 1806. Since no valid sale of the land could have been made unless it had been previously leased by the authority of law, the tax-deed and list of land sold to the state must be held to establish *prima facie* the fact that such lease had been made; otherwise, no effect would be given to the statute.

The evidence offered by the defendant to establish a sale of a portion of the land on the second Monday of May, 1875, under the act of March 1, 1875, known as the abatement act, was properly excluded. The defendant did not propose to prove that the lands then sold were delinquent for taxes of a year prior to the year 1874, and it was only

lands of that class which were subject to sale under the act of March 1, 1875. *Gamble* v. *Witty*, 55 Miss., 26; *Prophet* v. *Lundy*, 63 *Ib.*, 603; *Chambers* v. *Myrick*, 61 *Ib.*, 459; *Dingey* v. *Paxton*, 60 *Ib.*, 1038. It devolves upon one claiming under a sale made under that statute to prove by independent evidence that the land belonged to the class to which the statute applied. *Dingey* v. *Paxton* and *Chambers* v. *Myrick*, *supra*.

*The judgment is reversed and cause remanded.*