STATE ex rel. COM'RS OF LAND OFFICE v. LEWIS.

No. 31992. June 18, 1946.

*170 P. 2d 237.*

Everett H. Welborn and Bruno Miller, both of Oklahoma City, for plaintiff in error.

Reuel W. Little and Jack H. Smith, both of Madill, for defendant in error.

WELCH, J. Plaintiff sued as the owner of 20 acres of land in section 1, twp. 8 south, range 5 east, in Marshall

county, and alleged that a certain judgment of record in favor of the Commissioners of the Land Office of the State of Oklahoma appeared or purported to be a lien against his land, but that such judgment was ancient and obsolete and ineffective as a lien and should be canceled as a cloud on his title.

The commissioners contend that the money judgment in question is a continuing valid and subsisting lien.

Essential facts are that in 1928 the commissioners upon a loan of money took a real estate mortgage from Elizabeth Hendrix on 190 acres of land in sections 28 and 33, township 6 south, range 5 east, in Marshall county, and in 1936 the commissioners regularly obtained judgment against Elizabeth Hendrix in a stated sum of money, and for foreclosure of the real estate mortgage on the described 190 acres of land. The judgment was promptly and properly recorded, but there has been no foreclosure sale nor has any general or special execution issued on the judgment.

The same Elizabeth Hendrix in the beginning of 1942 and for some undisclosed period theretofore had owned the 20 acres of land involved in this action. That 20 acres was sold at tax resale to plaintiff in May, 1942, with valid resale deed executed and delivered and properly recorded.

The commissioners contend that upon rendition of the aforesaid judgment in 1936 the same constituted a lien not only on the land described in the mortgage foreclosure, but also upon other real estate then or thereafter owned by Elizabeth Hendrix. 12 O.S. 1941 § 706. And that since the judgment remains unpaid the lien continues and is superior to the lien of the county for ad valorem taxes. 68 O.S. 1941 § 394.

The plaintiff contends that the judgment lien of the commissioners which attached in 1936 had expired before plaintiff acquired his title in 1942.

The first section of statute above referred to makes the provision contended for by the commissioners, that is, that the money judgment from and after its entry on the judgment docket shall constitute a lien on all the real estate of the judgment debtor in the county. However, in the same title and in section 735, it is provided in material substance as follows:

"If execution shall not be sued out within five years after the date of any judgment that now is or may hereafter be rendered, in any court of record in this state, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor. . . ."

Thus we observe that while the statute created a lien as contended by the commissioners, the statute expressly provided the duration of such lien and for the expiration thereof.

While the commissioners contend that a money judgment in their favor does not become dormant, that is, that the dormancy statute does not apply to such judgments, the law is to the contrary. State ex rel. Com'rs of Land Office v. Weems, 197 Okla. 106, 168 P. 2d 629. See, also, Thompson v. Avery, 11 Utah, 214, 39 P. 829; United States v. Harpootlian, 24 Fed. 2d 646; Custer v. McCutcheon, 283 U. S. 514, 51 S. Ct. 530, 75 L. Ed. 1239; Lion Oil & Ref. Co. v. Rex Oil Co., 195 Ark. 1021, 115 S.W. 2d 556; Smith v. Toman, 368 Ill. 414, 14 N. E. 2d 478, and Payette v. Marshall County, 180 Iowa, 660, 163 N. W. 592.

Upon the authority of these statutes and decisions we conclude that while the statutes created the lien in favor of the commissioners, provision was also made limiting the existence of such lien, and that such statute is binding upon the commissioners and applicable to a judgment lien in their favor or behalf.

The commissioners also contend that this is in effect a suit against the state, which cannot be maintained for lack of consent on the part of the state.

Since the lien of the commissioners on the 20 acres of land here involved had fully expired, plaintiff would be entitled to have the record cleared of any purported lien of such judgment. It might be assumed that the commissioners were without authority to make any voluntary release of anything (64 O.S. 1941 § 52, subd. j), but it would seem plaintiff would be entitled to have some judicial forum where such right could be obtained. Section 6, art. 2, Oklahoma Constitution.

64 O. S. 1941 § 160 provides in material substance as follows:

"The Commissioners of the Land Office are hereby authorized and empowered to bring or defend suits in the name and on behalf of the State of Oklahoma in all matters affecting the public lands of the State, and in all matters affecting the loans, investing or collecting of school land and State land moneys, of, and belonging to the State; . . . "

The commissioners direct our attention to Hawks v. Walsh, 177 Okla. 564, 61 P. 2d 1109; Potter v. State Highway Commission et al., 184 Okla. 171, 86 P. 2d 293; Wentz v. Potter, 167 Okla. 154, 28 P. 2d 562, and other cases of a similar nature. In those and other cases we have held that actions for money judgment in damages could not be maintained for lack of consent on the part of the state to be so sued. And we have applied that rule in Goodin v. Commissioners of Land Office, 174 Okla. 364, 50 P. 2d 189, where plaintiff sought a money judgment in damages against the Commissioners of the Land Office.

But there is a striking difference between a claim for a money judgment for damages and a proceeding such as this to strike from the record or cancel that which upon the record has some appearance of being a lien on the land, but which in fact and in law is not a lien on the land involved.

Undoubtedly it was the legislative intent that the lien granted to commissioners or created by the statute should be fully effective and carry with it all rights of enforcement. Likewise it seems clear that it was the legislative intent that when such a lien had fully expired, the termination and expiration of the lien should be fully effective with full right on the part of any one interested to obtain that result in some manner fully adequate. No other method or manner has been suggested and none occurs to us other than by decree of a proper judicial tribunal in an applicable proceeding. If it were otherwise, a landowner, though possessing a definite right fixed by law, might be deprived of his right or suffer wrong or loss, contrary to the constitutional provision above cited to the effect that "the courts of justice . . . shall be open to every person and speedy and certain remedy afforded for every wrong, . . . " section 6, art. 2, of Oklahoma Constitution.

By reason of the foregoing we are convinced that insofar as this is an action against the state, the state has made provision therefor and given consent thereto both by clear implication and directly.

We observe that the Legislature, in 1945, in 64 O. S. 1941 § 82.1, provided as follows:

"The owner of any property which appears to be subject to the lien of a deficiency judgment in favor of the Commissioners of the Land Office may institute an action against the Commissioners of the Land Office in the county where the land is situated to determine whether such deficiency judgment is a lien against such property. Jurisdiction of the Commissioners of the Land Office may be obtained in such an action by service of a summons upon the Secretary of said Commissioners. In such cases it shall be the duty of the Commissioners of the Land Office to cause such action to be defended in their behalf."

Thus, beyond question, a landowner in the situation of the plaintiff here **could now maintain such an action as this.**

It might be argued that the passage of this act indicates complete lack of any right or authority prior thereto to

maintain such an action. On the other hand, it might be argued that this act was a declaration in more certain terms of the policy always obtaining in actions such as this one. We would prefer the latter construction since we have found that the plaintiff here had the right to commence and maintain this action to cancel the purported lien of this judgment which definitely ceased to be any lien on the 20 acres of land here involved.

Actions to enforce fixed legal rights were considered in Riley v. Carter, 165 Okla. 262, 25 P. 666; Edwards v. Carter, 167 Okla. 287, 29 P. 2d 610; State ex rel. Telle v. Carter, 170 Okla. 50, 39 P. 2d 134, and Carter v. Miley, 187 Okla. 530, 103 P. 2d 933.

Actions maintainable to establish and enforce rights under statutory provisions are observed in United States v. Jones, 109 U. S. 513, 27 L. Ed. 1015; Minnesota v. United States, 305 U. S. 382; United States v. Hellard, 138 Fed. 2d 985, 322 U. S. 363, 88 L. Ed. 1326. See, also, Kiefer and Keifer v. Reconstruction Finance Corporation, 306 U. S. 381, 83 L. Ed. 784, and especially the extensive annotation following at pages 794 et seq.

The judgment for plaintiff is affirmed.

RILEY, OSBORN, BAYLESS, CORN, and DAVISON, JJ., concur. HURST, V.C.J.. dissents.